CAPPIELLO HOFMANN & KATZ, P.C.
Attorneys for Plaintiff
360 W. 31st Street, Suite 1506
New York, N.Y. 10001
Tel: (212) 465-8840

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DAVID SCHOOLS,
      Plaintiff,         04-Cv 10291 (J. Kaplan)


    -against-


GREAT LAKES DREDGE & DOCK COMPANY,
and the TUG ARTHUR ZEMAN, IN REM.,
      Defendants.
-----------------------------------------------------------------x

## PLAINTIFF'S PROPOSED JURY CHARGES

  This case arises under the General Maritime Law, for plaintiff's claimed injuries caused by the unseaworthiness of the vessel, and under a Federal statute, called the Jones Act, which allows recovery for injuries to seaman injured as a result of negligence. Each of these doctrines of law imposes different obligations and duties upon the defendant shipowner and employer, which will be discussed. A breach of the duties created by either doctrine is sufficient to render the defendant liable for plaintiff's injuries.

**PROPOSED CHARGES ON ISSUE OF UNSEAWORTHINESS**

1.  The shipowner has the obligation to provide its seamen with a seaworthy vessel. It is the duty of a shipowner to provide a seaman working aboard its vessel with a safe place to work, to employ appliances and equipment to carry out the ship's functions which are reasonably fit for their intended purposes and to provide officers and crew equal in disposition and competence to the ordinary man of the calling. McAllister vs. Magnolia Petroleum Co., 357 U.S. 221 (1958); Mahnich vs. Southern S.S. Co., 321 U.S. 96 (1944).

2.  The plaintiff is not required to show that the entire ship was unseaworthy, rather, he need only show that the part of the ship or the gear or equipment he was using was unseaworthy and caused him his injury, 4 L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, Modern Federal Jury Instructions - Civil, P. 90-71 (1985); Guiterrez v. Waterman Steamship Corp., 373 U.S. 206, 213 (1963); Boudoin v. Lykes Bros. Steamship Co., Inc., 348 U.S. 336, 340 (1955).

3.  When it is claimed that a portion of the ship or its gear was sufficiently dangerous to render the ship unseaworthy as to the injured seaman, the seaman must show that the portion of the vessel where he was working, or the piece of equipment he was using, was no longer reasonably fit for its intended use by the crew. Rice v. Atlantic Gulf & Pacific Co., 484 F.2d 1318, 1321 (2d Cir. 1973).

4.  The failure of a piece of vessel equipment under proper and expected use is sufficient to establish unseaworthiness. Where the ship's equipment malfunctions under normal use, you may infer that the equipment is defective, and thus, unseaworthy. Lee v. Pacific Far East

Line, Inc., 566 F.2d 65, 67 (9th Cir. 1977), citing Usner v. Luckenbach Overseas Corp. 400 U.S. 494, 499, 91 S.Ct. 514, 517 (1971); Villers Seafood Co. v. Vest, 813 F.2d 339, 342 (11th Cir. 1987). This is especially so where there is no alternate explanation for the malfunction. Villers Seafood Co. v. Vest, 813 F.2d 339, 342 (11th Cir. 1987).

     5.    Unseaworthiness claims involving a vessel's equipment are not restricted to the operation of the vessel's equipment itself, but, in addition, include an unsafe method of work. Thus, improper work practices with otherwise seaworthy equipment will render a vessel unseaworthy. Rogers v. Eagle Offshore Drilling Service, Inc., 764 F.2d 300, 303-304 (5th Cir. 1985); Phillips v. Western Co. of North America, 953 F. 2d 923, 928 (5th Cir. 1992).

### DUTY TO PROVIDE SEAWORTHY SHIP IS NON-DELEGABLE

     6.    The duty to provide a seaworthy vessel with safe equipment and appliances and competent officers and crew is absolute and non-delegable and exists regardless of whether the unseaworthiness is temporary or permanent. Mitchell vs. Trawler Racer, 362 U.S. 551 (1960); Crawford vs. Pope & Talbot, Inc., 206 F.2d, 784 (3d Cir. 1953). By non-delegable it is meant that the shipowner cannot appoint an independent contractor and delegate to him the duty to provide a seaworthy vessel and thereby escape liability. Furthermore, the employer has a duty to provide a safe place to work even when the employee's duties require him to enter property or use equipment owned and controlled by a third party. Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir. 1977); Cleveland-Cliffs Iron Co. v. Martini, 96 F.2d 632, 634 (6th Cir. 1938); 3 L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, Modern Federal Jury Instructions - Civil, p. 90-31 (1985).

3

7.	Unseaworthiness of a vessel relates to a condition of the vessel or its equipment. It is different from negligence in that you need not show a poor work practice or improper order. The key is whether there was a <u>condition</u> that rendered the vessel or certain pieces of its equipment not reasonably fit for their intended purpose. <u>Mitchell vs. Trawler Racer</u>, 362 U.S. 551 (1960); <u>Crawford vs. Pope & Talbot, Inc.</u>, 206 F.2d, 784 (3d Cir. 1953).

8.	A breach of the obligations to furnish a seaworthy vessel, safe and proper appliances, and competent officers and seamen creates a species of liability without fault (i.e. without negligence) provided, of course, that there is a causal connection between the unseaworthy condition and the plaintiff's injuries. <u>Seas Shipping Co. vs. Sieracki</u>, 328 U.S. 85 (1946); <u>Mahnich vs. Southern S.S. Co.</u>, <u>supra</u>. The shipowner incurs liability even without actual or constructive knowledge of the unseaworthy condition. <u>Mitchell vs. Trawler Racer</u>, 362 U.S. 551 (1960).

**INJURY CAUSED BY CONDITION SEAMAN SENT TO CORRECT**

9.	A seaman injured by an unseaworthy condition he was sent to correct may recover for those injuries, so long as the creation of the condition was not the result of his own fault. <u>Yehia v. Rouge Steel Corp.</u>, 898 F.2d 1178 (6th Cir. 1990); <u>Joia v. Jo-Ja Service Corp.</u>, 817 F.2d 908 (1st Cir. 1987), <u>cert</u>. <u>denied</u> 484 U.S. 1008 (1988); <u>McCoy v. United States</u>, 689 F.2d 1196, 1198-99 (4th Cir. 1982).

10.	In this case, the plaintiff alleges that the vessel was unseaworthy in that:

-The acetylene bottle broke loose because the securing chain snapped, and one link parted. There was evidence that there was corrosion of the chain, and consequent weakening

thereof, which was hidden by a coat of paint applied over the corrosion.

-The sounding tube which was broken off and which sat up from the deck approximately 12-14", was of improper construction and placement, and failed to have proper protection .

-Once the fuel tank flooded, the vessel's engine shut down, subjecting the boat to the mercy of the sea, and thus, rendering the entire vessel unseaworthy;

-The deck of the bathroom was unseaworthy in that it failed to have proper non-skid treatment.

-The deck of the bath area was on a steep incline, as originally designed and built.

-The deck of the bathroom had diesel fuel upon it from the stripping of the tanks .

-The vessel was improperly ballasted with its rear deck awash with seawater.

-The vessel was improperly designed so that the operator of the vessel had to ballast it in such a way that the rear deck was customarily under water.

**PROPOSED CHARGES ON ISSUES OF NEGLIGENCE OF SHIPOWNER**

11.     The alternate remedy that the seaman has is to bring an action for damages under a Federal statute commonly known as the Jones Act, which provides that a shipowner shall be liable to a seaman in damages for an injury incurred while he is engaged in the course of his employment and his injury results, in <u>whole or in part</u>, from the negligence of any of the officers, agents or employees of the shipowner.

12.     NEGLIGENCE DEFINED: Negligence is simply the failure to use the same degree of care which a person of ordinary prudence would use in the circumstances of a given

situation. It can be the doing of something which a reasonably prudent person would not have done or failing to do something which a reasonably prudent person would have done under the circumstances. <u>Gallick v. Baltimore & Ohio R.R.</u>, 372 U.S. 108, 83 S.Ct. 659 (1963); 3 L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, <u>Modern Federal Jury Instructions - Civil</u>, p. 89-23 (1985).

13.     **DUTY TO GUARD AGAINST FORESEEABLE RISKS**: The defendant is under a duty to guard against those risks or dangers of which it knew or by the exercise of due care should have known. In other words, the defendant's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances. <u>Gallick v. Baltimore & Ohio R.R.</u>, 372 U.S. 108, 83 S.Ct. 659 (1963); 3 L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, <u>Modern Federal Jury Instructions - Civil</u>, p. 89-23 (1985).

14.     Where the plaintiff claims that a hazardous condition caused his injury, the plaintiff must show that there existed a defect or hazard which defendant knew or should have known existed and which should have been corrected. <u>Monteleone v. Bahamas Cruises, Inc.</u>, 838 F.2d 631 (2nd Cir. 1988); <u>Rainey v. Pacquet Cruises, Inc.</u> 709 F.2d 169 (2nd Cir. 1983).

### DUTY TO PROVIDE A SAFE PLACE TO WORK

15.     It is the continuing duty of the defendant, as an employer, at the time and place in question, to use ordinary care under the circumstances, in furnishing the plaintiff with a reasonably safe place to work, and to use ordinary care under the circumstances to maintain and keep such place of work in a reasonably safe condition. This does not mean that the employer is a guarantor or insurer of the safety of the place to work, but it requires the

employer to exercise ordinary care, under the circumstances, to see that the place in which the work is to be performed is reasonably safe. Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457 (1957) Bailey v. Central Vermont Ry., 319 U.S. 350, 352-53, 63 S.Ct. 1062, 1063-64 (1943); Yehia v. Rouge Steel Corp., 898 F.2d 1178, 1184 (6th Cir. 1990); Koehler v. Presque-Isle Transp. Co., 141 F.2d 490, 491 (2d Cir.) cert. denied 322 U.S. 764 (1944).

16. The Jones Act imposes on the defendant a duty to exercise reasonable care to provide the plaintiff with a reasonably safe place to work, reasonably safe conditions in which to work and reasonably safe tools and equipment. This is a non-delegable duty, thus the employer has a duty to provide a safe place to work even when the employee's duties require him to enter property or use equipment owned and controlled by a third party. 4 L. Sand, J. Siffert, S. Reiss, J. Sexton & J. Thorpe, Modern Federal Jury Instructions - Civil, pps. 89-32, 90-30 (1985); Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 327-28, 81 S. Ct. 6 (1960).

17. The shipowner also has a duty to warn those who reasonably are expected to encounter the condition of its existence, and the failure to do so may constitute negligence. Rainey v. Pacquet Cruises, Inc. 709 F.2d 169 (2nd Cir. 1983).

18. **CONSTRUCTIVE NOTICE**: In determining whether defendant should have known of the presence of the alleged defective condition, you must consider how long the condition existed prior to the accident. If it existed for such a period of time that the reasonable vessel owner should have discovered the existence of the condition, and had an opportunity to correct it, then plaintiff has proven that the defendant had constructive notice of

the condition. <u>Monteleone v. Bahamas Cruises, Inc.</u>, 838 F.2d 631 (2nd Cir. 1988); <u>Rainey v. Pacquet Cruises, Inc.</u> 709 F.2d 169 (2nd Cir. 1983).

19. The burden is on plaintiff to prove, first that at the time he was injured he was in the course of his employment; second, that defendant was negligent that is - that an officer, agent, or employee of defendant, acting in the course of his employment failed to exercise reasonable care under the circumstances, and third, that such negligence played some part, <u>however slight</u>, in causing the occurrence in which plaintiff was injured. <u>Ferguson v. Moore-McCormack Lines, Inc.</u>, 352 U.S. 521, 77 S.Ct. 457 (1957); <u>Rogers v. Missouri Pacific R.R.</u>, 352 U.S. 500 (1957).

20. Any negligent act or omission of an officer, or employee, or other agent of the corporation, in the performance of his duties, is held in law to be the negligence of the corporation. <u>Trost v. American Hawaiian Steamship Co.</u>, 324 F.2d 225 (2d Cir. 1963), <u>cert. denied</u>, 376 U.S. 963 (1964).

21. Since a corporation can act only through its officers, employees, or other agents, the burden is on the plaintiff to establish by a preponderance of the evidence in the case, that the negligence of one or more officers, or employees, or other agents of the defendant, other than the plaintiff himself, was a proximate cause of any injuries and consequent damages sustained by plaintiff.

**FAILURE TO COMPLY WITH CONSENSUAL STANDARDS**

22. There has been evidence offered in this case that the condition and maintenance of the deck of the bathroom where plaintiff was injured fell below the standard

8

recommended within several industrial standards and a U.S. Military Standard about which you heard testimony. These standards may be used by you as references sources in judging whether the conduct of the defendant here was reasonable. <u>Melerine v. Avondale Shipyard</u>, 659 F.2d 706, 713 fn. 22 (5th Cir. 1981) (ANSI); <u>Keller v. United States</u>, 38 F.3d 16 (1st Cir. 1994): (ASTM, MARAD OSHA and MILITARY (MIL-D) standards were referred to by experts, and considered as relevant by court.)

## INDUSTRY CUSTOM AND PRACTICE

23.     Evidence has been presented to you that it is the custom in the industry for the companies operating tugboats to use non-skid paint in walking and working areas. You may consider this evidence in determining the shipowner's liability. <u>Urie v. Thompson,</u> 337 U.S. 163, 177-78; 69 S.Ct. 1018, 1028 (1949).

24.     Plaintiff alleges that defendant was negligent for causing, or allowing:

-The acetylene bottle to break loose because the securing chain snapped, and one link parted. There was evidence that there was corrosion of the chain, and consequent weakening thereof, which was hidden by a coat of paint applied over the corrosion.

-Improper design, construction and placement of the sounding tube which was broken off d placement, and failed to have proper protection;

-Once the fuel tank flooded, the vessel's engine to be caused to shut down, subjecting the boat to the mercy of the sea, and thus, rendering the entire vessel unseaworthy;

-The deck of the bathroom to be in service without proper non-skid treatment;

-The deck of the bath area to be on a steep, dangerous incline, as originally designed

9

and built;

-The deck of the bathroom to have diesel fuel upon it, and not be cleaned up;

-The vessel to be improperly ballasted with its rear deck awash with seawater.

**PROPOSED CHARGES ON ASSUMPTION OF THE
RISK AND CONTRIBUTORY NEGLIGENCE**

25.     Assumption of risk is not a defense to either unseaworthiness or negligence. Thus, the mere fact that the plaintiff was aware of the existence of the danger which subsequently caused the injuries which are the subject of this action does not excuse the defendant, its officer, agents or employees from any duty owed the plaintiff to furnish safe and seaworthy appliances and a safe place to work. The Arizona vs. Anelich, 298 U.S. 110 (1936); Yehia v. Rouge Steel Corp., 898 F.2d 1178 (6th Cir. 1990); Joia v. Jo-Ja Service Corp., 817 F.2d 908 (1st Cir. 1987), cert. denied 484 U.S. 1008 (1988) Blankenship v. Ellerman's Wilson Lines, 265 F.2d 455 (4th Cir. 1958).

26.     Furthermore, plaintiff is not guilty of any contributory negligence by going to work in a dangerous location.  "Evidence of an act of negligence other than (plaintiff's) knowledge of the dangerous condition (is)...required..." The defense of contributory negligence requires some act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition. Rivera v. Farrell Lines, Inc., 474 F.2d 255, 258 (2d Cir. 1973).

## PROPOSED CHARGES ON PROXIMATE CAUSE

27.     An injury or damage is proximately caused by an act, or failure to act, whenever it appears, from a preponderance of the evidence in the case, that the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage.  So, if you should find from the evidence in this case, that any negligence of the defendant or any officers, agents, or employees, contributed in any way or manner toward an injury or damage suffered by the plaintiff you may find that such injury was proximately caused by the defendant's act or omission. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448 (1957).

28.     This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons may operate at the same time, or one after the other, either independently or together, to cause injury or damage; and in such case, each may be a proximate cause.

29.     The only test is whether each of the facts or things provided a link in the causal chain of events which led to the injuries. Slattery v. Marra Bros., 186 F.2d 134, 135 (2d Cir. 1951).

## PROPOSED CHARGES ON DAMAGES

30.     If you find that plaintiff is entitled to recover from the defendant, you must render a verdict in a sum of money which will justly and fairly compensate the plaintiff for all losses proximately resulting from the injuries sustained.

11

## LOST WAGES

31.     Plaintiff is entitled to be reimbursed for the loss of earnings he has suffered as a result of his injuries from the time he was injured to the present date and for such wages as you feel he will lose in the future due to the injuries sustained aboard defendant's vessel. Any award you make for earnings may not be estimated but must be calculated from the period of time that you find the plaintiff was disabled by his injuries from carrying on his work and the amount that you find he would have earned during this period had he not been disabled.

32.     None of the award you make to plaintiff is subject to federal or state income taxes. With respect to past or future earnings losses, therefore, if you award any such amount, it should be the net amount plaintiff would have received per year after taxes had been deducted from his gross earnings.

33.     In determining diminution of future earnings potential, you should take into account the plaintiff's past wages he received for straight time pay plus overtime pay, plus the value of additional benefits which he is losing such as for the value of food and lodging he otherwise would be receiving if employed upon the vessel. McCarthy v. American Eastern Corporation, 175 F.2d 727 (3rd Cir. 1949).

34.     In determining the amount of plaintiff's wage losses you shall include an amount covering plaintiff's lost fringe benefits, such as pension and vacation contributions. Culver v. Slater Boat Co., 722 F.2d 114, 117 (5th Cir. 1983) cert. denied, sub. nom. Heinrich Schmitt Reederei v. Byrd, 467 U.S. 1252, 104 S.Ct. 3537 (1984), Cruz v. American Export Isbrandtsen Lines, Inc., 310 F. Supp. 1364 (S.D.N.Y. 1970); Manigault v. United States, 316

F.Supp. 688 (E.D.Pa. 1970).

35. One suitable measure for determining future earnings losses is to base your calculation upon the plaintiff's past earnings history, as reflected in his income tax records, pay stubs and wage statements, to show what his normal earnings capacity would have been into the future. Petition of United States Steel Corporation, 479 F.2d 489, 494-95 (6th Cir.) cert. denied, 414 U.S. 859 (1973). Of course, you may take into account other factors, such as better employment prospects or increases the employee would have earned under a union collective bargaining contract. Id.

## COLLATERAL SOURCE RULE

36. The collateral benefits rule applies to this case. This rule recognizes that a tortfeasor should be responsible for all of the damage he or she causes, and should not benefit from the fact that a plaintiff may have received benefits from outside sources. Thus, in this case, you are to make no set-off for any benefits the plaintiff may have received, or that you think he may have received. McDermott, Inc. v. AmClyde and River Don Castings, Ltd., 114 S.Ct. 1461 (1984).

37. Admiralty "collateral source" rules prevent a set off from plaintiff's damages for the following items, among others:

    a. State unemployment compensation disability benefits. Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, (9th Cir. 1962).

    b. Social Security Benefits. In re Farrell Lines, 389 F. Supp. 194 (S.D. Ga. 1975).

    c. Benefits pursuant to union pension plans or union collective bargaining

13

agreements. Russo v. Matson Navigation Co., 486 F2d 1018, 1973 AMC 2334 (9th Cir. 1973); Haughton v. Blackships, Inc., 462 F.2d 788 (5th Cir. 1972).

    d.    Veterans benefits and pensions. A.H. Bull S.S. Co. v. Ligon, 285 F.2d 936 (5th Cir. 1960).

    e.    Disability benefits and medical expenses paid pursuant to individual or group insurance plans. Thomas v. Humble Oil Refining Co., 420 F.2d 793 (4th Cir. 1970).

    38.    In determining how long a person will work, or would have worked except for an accident that has occurred to them, it is permissible for you to find that the injured person would work until age 67, or even beyond. In making your determination as to how long the plaintiff would work into the future before fully retiring, you may take into account the fact that full Social Security Benefits accrue at age 67, 42 U.S.C. §416(1)(l)(1)(E); Gorniak v. National Railroad Passenger Corporation, 889 F.2d 481 (3rd Cir. 1989).

## PAIN AND SUFFERING

    39.    If you decide for the plaintiff on the question of liability, you may include in your verdict an award for the injury you find that he suffered and for conscious pain and suffering, and loss of life's pleasures which you find to have been caused by the negligence of defendant or defendant's breach of its warranty of seaworthiness to plaintiff. The plaintiff is entitled to recover a sum of money which will justly and fairly compensate him for his injury and for his conscious pain and suffering and his loss of life's pleasures due to the accident. Earl v. Bouchard Transportation Co., Inc., 917 F.2d 1320, 1325-27 (2d Cir. 1991); Dugas v. Kansas City S. Ry. Lines, 473 F.2d 821, 827 (5th Cir. 1973)(F.E.L.A.) cert.denied, 414 U.S.

823 (1973).

40.  While the Court can give you no yardstick to measure the monetary value of pain and suffering and the inconvenience suffered by plaintiff, you may take into consideration units of time insofar as they reflect periods of pain and suffering and the intensity of such pain and suffering during those periods. Imperial Oil Ltd. v. Drlik, 234 F.2d 4 (6th Cir.) cert. denied, 352 U.S. 941 (1956); Bowers v. Pennsylvania R.R. Co., 182 F.Supp. 756, aff'd. 281 F.2d 953 (3d Cir. 1960).

41.  In addition, if you find that any of plaintiff's injuries are permanent, you must also make such allowance in your verdict as you think the circumstances warrant taking into consideration the period of time that has elapsed from the date of injury to the present time and the period of time plaintiff can be expected to live. In this connection, it is pointed out to you that plaintiff is now <u>59</u> years of age and according to the life tables for males issued by the U.S. Department of Health, Education and Welfare, plaintiff has a life expectancy of 20.8 years. Such tables are, of course, nothing more than statistical averages. They neither assure the span of life that I have given you nor assure that the span of plaintiff's life will not be greater. The life expectancy figure I have given you is not binding upon you, but may be considered by you together with your own experience and the evidence you have heard concerning the condition of plaintiff's health, his habits, employment and activities in determining what the plaintiff's present life expectancy is.

15

**PREJUDGMENT INTEREST AND DISCOUNT RATE**

42.     Because an award of compensation for future losses, gives the plaintiff the use of the money before he otherwise would have earned it, the plaintiff would receive a windfall because he can take the money and invest it and have it earn more than he otherwise would have received. As a result, the Court will reduce his award by what is known as a discount to reduce the award to its "present value". McCrann v. United States Lines, 803 F.2d 771 (2d Cir. 1986).

Furthermore, in theory, the defendant tort-feasor is obliged to compensate the injured party at the instant that the injury occurred. In reality, of course, the plaintiff must wait until the litigation has run its course. As a result, once the award is adjusted to its present value, as of the date of the injury, the plaintiff is entitled to receive interest at a fair market rate on that adjusted award up to the date the judgment is entered in his favor. Id.

43.     An acceptable measure for the prejudgment interest rate is the average interest rate paid on six-month United States Treasury Bills during the period from the date of the accident through the date of trial. Id. at 774.

44.     If you find for the plaintiff, you may also award plaintiff interest on that portion of the damages award that represents past lost earnings and past pain and suffering. This should be awarded absent exceptional circumstances which would absolve the defendant. Newburgh Land & Dock Company v. Texas Company, 227 F.2d 732 (2d Cir. 1955); Chung, Yong Il v. Overseas Navigation Co., 774 F.2d 1043 (11th Cir. 1985); Mitsui & Co., Ltd. v. American Export Lines, Inc., 636 F.2d 807, 823 (2nd Cir. 1981).

16

## UNSEAWORTHINESS OF VESSEL REQUIRES YOU TO AWARD PREJUDGMENT INTEREST

45.     If you find that the vessel's unseaworthiness with, or without the defendant's negligence, caused the plaintiff's injury, you should award prejudgment interest.  The fact that the defendant's negligence under the Jones Act also contributed to the injury is irrelevant to the determination that prejudgment interest is awardable.  <u>Magee v. United States Lines, Inc.</u>, 976 F.2d 821 (2nd Cir. 1992).

## INCOME TAXES

46.     Furthermore, the plaintiff's yearly lost earnings award should be reduced by an amount you find is appropriate for federal and state income taxes which he would have paid had he earned the amounts you award.  <u>Norfolk & Western Ry. Co. v. Liepelt</u>, 444 U.S. 490, 100 S.Ct. 755 (1980).

Dated: New York, New York
       August 29, 2005

CAPPIELLO HOFMANN & KATZ, P.C.
Attorneys for Plaintiff

By: _____
Paul T. Hofmann (PH 1356)
360 W. 31st Street
New York, New York 10001
212-465-8840

AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK   )

      GERARD HARRINGTON being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at 360 West 31st Street, New York, N.Y. 10001. That on the 29th day of August 2005, deponent served the within: "PLAINTIFF'S PROPOSED JURY CHARGES " upon:

      Thomas E. Stiles, Esq.
      30 Main Street, 7H
      Brooklyn, NY 11201

at the last known address designated by them for that purpose by depositing a true copy of same enclosed by mail in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Service department within the State of New York.

      _____
      Gerard Harrington

Sworn to before me this
29th day of August 2005
_____
Notary Public

    MARIELENA REYES
  Notary Public State of New York
    No. 01RE4968265
  Qualified in New York County
  Commission Expires June 18, 200_6_